IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES V. JONES, | ) | |
| | ) | |
| Plaintiff-Claimant, | ) | |
| | ) | No. 09 C 7645 |
| vs. | ) | |
| | ) | Jeffrey T. Gilbert |
| CAROLYN W. COLVIN, Acting | ) | Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Claimant James V. Jones ("Claimant") brings this action under 42 U.S.C. § 405(g),

seeking reversal or remand of the decision by Respondent Carolyn W. Colvin,[1] Acting

Commissioner of Social Security ("Commissioner"), denying Claimant's application for

supplemental security income. This matter is before the Court on the parties' cross-motions for

summary judgment [Dkt.##53,59].

Claimant argues that Administrative Law Judge's ("ALJ") decision denying his

application for supplemental security income should be reversed or, alternatively, should be

vacated and remanded to the Social Security Administration ("SSA") for further proceedings. In

support of his motion for summary judgment, Claimant raises the following issues: (1) whether

the ALJ's determination at step two was erroneous because he failed to assess the combined

effect of Claimant's impairments; (2) whether the ALJ's determination at step three concerning

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.
Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin is automatically
substituted as the Defendant-Respondent in the case. No further action is necessary to continue this suit
by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

whether Claimant's impairments meet or medically equal a listed impairment or combination of impairments was erroneous; (3) whether the ALJ's residual functional capacity ("RFC") determination was erroneous; (4) whether the ALJ's credibility determination was patently wrong; (5) whether the ALJ erred by failing to conduct a § 404.1535 analysis; and (6) whether the ALJ's step five determination was erroneous.

For the reasons discussed herein, Claimant's motion for summary judgment [Dkt.#53] is denied, and the Commissioner's cross-motion [Dkt.#59] is granted, affirming the Commissioner's decision denying Claimant's application for supplemental security income

## I. BACKGROUND FACTS

### A.    Procedural History

On April 25, 2007, Claimant filed his application for supplemental security income, alleging a disability onset date beginning July 23, 1999. R.9.  The SSA initially denied the application on June 6, 2007 and upon reconsideration on October 7, 2007. R.9.  Thereafter, Claimant filed a written request for a hearing on December 6, 2007. R.9.  Claimant appeared and testified at a hearing on July 29, 2009 and was represented by counsel at the hearing. R.9. Vocational expert James Breen and medical expert Mark Oberlander Ph.D. also testified at the hearing. R.9.

On September 1, 2009, the ALJ issued his decision finding that Claimant has not been under a disability within the meaning of the Social Security Act since April 25, 2007, the date his application for supplemental security income was filed. *See* 20 C.F.R. § 416.920(g). R.19. Specifically, the ALJ found that Claimant has severe impairments, including status post-surgical repair right ankle, chronic pancreatitis, depressive disorder, anti-social personality disorder, and

2

polysubstance abuse. R.11 The ALJ, however, concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). R.11. The ALJ then concluded that Claimant has "the residual functional capacity to perform unskilled light work as defined in 20 C.F.R. § 416.967(b), with limitations: The claimant can lift a maximum of 20 pounds occasionally and lift and carry up to 10 pounds frequently, stand and/or walk about 6 hours in a normal 8-hour workday, sit about 6 hours in a normal 8-hour workday, and push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting and restricted by no use of his right lower extremity subject to postural limitations of only occasionally climbing ramps or stairs, and of never climbing ladders, ropes, or scaffolds; an environmental limitation of avoiding concentrated exposure to hazards (machinert [sic], heights, etc.); and limitations imposed by the claimant's mental impairments such that he can perform only simple, repetitive tasks, that he not be required to do [sic] participate in group projects, and that he have occasional contact with supervisors, co-workers, and the general public." R.14.

The ALJ determined that Claimant does not have any past relevant work. R.18. The ALJ, however, concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R.19. The ALJ ultimately concluded that Claimant has not been under a disability, as defined in the Social Security Act, since April 25, 2007. R.19.

On September 29, 2009, Claimant filed a request with the Appeals Council for review of the ALJ's decision. R.4-5. The Appeals Council denied Claimant's request for review on November 23, 2009, making the ALJ's determination the final decision of the Commissioner. R.1-3. Claimant seeks review in this Court pursuant to 42 U.S.C.§ 405(g).

**B.     Hearing Testimony**

**1.     Claimant James V. Jones**

At the time of the hearing, Claimant was 40 years old and was living with his girlfriend. R.24. He is single and has two minor children. R.24. He attended some high school but stopped going when he was a junior and never obtained his GED. R.33-34. He testified that he has difficulty reading. R.34. Claimant does not have any past relevant work. R.18. Claimant testified that he worked some side jobs as a mechanic for cash payments but that he no longer is working because he does not "have the patience" to continue those jobs. R.28. Claimant testified that he currently has no income and that he has a Link card. R.25.

Claimant testified that he continues to have problems with his pancreas and that he recently was hospitalized. R.25. Claimant also testified that he continues to have pain in his right ankle and leg as a result of a previous accident in 1984. R.29-30, 38. He testified that he has difficulty walking on uneven surfaces. R.30. Claimant testified that he can lift two gallons of milk and that he could pick them up from the floor to the table. R.37-38.

Claimant testified that he can take clothes out of the washer and put them in the dryer. R.30. He testified that he can clear the table. R.30. However, he stated that someone else prepares his meals. R. 31-32. He does not wash dishes, vacuum or mow the law. R.30-31.

Claimant testified that he has difficulty sleeping and that he wakes up feeling tired. R.31, 35. He does not interact much with others. R.32. Claimant stated that he preferred to stay by himself in the house. R.33. Claimant testified that he enjoyed playing with radios, watching television and listening to music. R.34. He does not go to the movies. R.35.

Claimant testified that he meets with his psychiatrist and his therapist every two months. R.28-29. Claimant testified that he does not attend family functions very often because he feels that his family does not want him there. R.35. Claimant testified that he does not like being in a crowd because he thinks that people will talk about him. R.32. Claimant also testified that he has problems taking orders from supervisors and that he does not like it when someone stands over his shoulder while he is working. R.32-33.

### 2. Vocational Expert James Breen

Vocational expert ("VE") James Breen testified that Claimant has no past relevant work. R.58. Based on a hypothetical posed by the ALJ which assumed a 40-year-old individual with limited education, with no past work experience, with no exertional limitations, and with non-exertional limitations limited to simple, repetitive, routine duties in a work environment that would have limited contact with co-workers, the public and no repetitive contact with supervisors and also would not require working in a group, the VE testified that there are jobs that would fit within those limitations. R.58. The VE testified that there would be unskilled, medium and light level jobs. R.58-59. The ALJ posed another hypothetical assuming that same individual with the with a further restriction that would limit the individual to less than six hours of standing or walking in an eight hour-day, the VE testified that there are unskilled, sedentary jobs that are available in the workforce pursuant to the *Dictionary of Occupational Titles*. R.60.

### 3.    Medical Expert Mark Oberlander Ph.D.

Dr. Mark Oberlander testified as an impartial medical expert. R.39. Dr. Oberlander did not examine Claimant but testified that there was sufficient evidence in the record (which he reviewed) for him to offer an opinion on Claimant's mental impairments. R.40. Dr. Oberlander testified that the medical evidence indicated a presence of an affective disorder under listing 12.04, a personality disorder under 12.08, and psychiatric symptomotology under listing 12.09 for substance use and abuse. R.40-41.

Dr. Oberlander testified that based on the combination of listings 12.04, 12.08 and 12.09, the medical evidence suggested that Claimant's functional limitation to engage in activities of daily living is mild, to maintain social functioning is moderate, and to maintain concentration, persistence and pace is marked when alcohol use is active and is moderate when alcohol use is not a contributing factor.  R.45. Dr. Oberlander testified that there was no evidence of any episodes of decompensation or deterioration of extended duration and concluded that the C-criteria do not apply in this case. R.45.  Dr. Oberlander opined that Claimant "retains the mental capacity to engage in simple, repetitive, routine work activities with the only allowances needing to be taken into consideration is that the work environment not have him in any group projects with some minimal allowance for less than extensive contact with co-workers, the public, and any extensive repetitive contact with supervisors." R.46

### C.    Medical Evidence

### 1.    Medical Records

Claimant submitted some medical evidence in support of his application for supplemental security income. Claimant submitted medical records from Adventist Glenoaks Hospital dated

October 12, 2006 through April 21, 2009, from DuPage County Health Department dated July 11, 2007 through September 24, 2009, and minimal records from the Illinois Department of Corrections dated March 8-28, 2007 and Alexian Brothers Medical Center dated June 8-10, 2007.

The medical records from Adventist Glenoaks Hospital include general diagnostic records, emergency room records, laboratory testing, consultation reports and discharge reports with no specific identifying treating physician or opinion from a treating physician. R.279-521; 574-815. These records detail general medical treatment Claimant received from approximately October 2006 through April 2009.

The medical records from DuPage County Heath Department include psychiatric clinical evaluations and treatment notes from Steven Penepacker M.D. as Claimant's treating psychiatrist and Pamela Lambur LCPA., CADC. as Claimant's therapist. R.257-275; 522-563; 564-773. Dr. Penepacker and Ms. Lambur began treating Claimant as a new patient on July 11, 2007. R.272. Claimant received intermittent psychiatric treatment at the DuPage County Health Department. There is a six month gap in Claimant's treatment record from August 2008 through February 2009. R.522-563. Throughout this time period, Claimant met with Ms. Lambur to discuss his condition, and at times, Ms. Lambur discussed with Claimant the fact that he continued to consume alcohol and failed to keep his appointments. R.525, 531, 532, 544, 545.

2.    **State Agency Psychiatric Consultants**

A Physical Residual Functional Capacity Assessment was performed by Julio Pardo M.D. on May 9, 2007. R.227-234. Dr. Pardo found that Claimant had a history of right root drop, hypertension and seizures. R.228, 234. Dr. Pardo did not find anything in Claimant's previous

medical records of pancreatitis, including in his medical records from the Department of Corrections. R.234. Dr. Pardo found that Claimant was capable of light work. R.234.

A Psychiatric Review Technique was performed by Donald Henson Ph.D. on May 9, 2007. R.213-226. In his review, Dr. Henson considered listings 12.04 for affective disorders, 12.08 for personality disorder and 12.09 for substance and addiction disorders. R.213. Dr. Henson concluded that a Claimant's depression did not satisfy the criteria for 12.04 and that Claimant's history of antisocial behavior did not satisfy the criteria for 12.08. R.216, 220. As for 12.09, Dr. Henson concluded that there were "pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment," and the Psychiatric Review Technique requires that if there are behavioral changes of physical changes associated with the regular use of substances that effect the central nervous system then further evaluation should proceed under the applicable listings – in this case, 12.04 and 12.08. R.221.

Dr. Henson determined that Claimant's mental impairments were not severe. R.213. With regard to the B-criteria, Dr. Henson found Claimant had mild restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence and pace with no episodes of decompensation.R.223. Dr. Henson also found that the medical records did not establish the existence of any C-criteria. R.224.

The initial findings of Dr. Pardo and Dr. Henson were reviewed on reconsideration by David Bitzer M.D. on October 25, 2007 and Leon Jackson Ph.D. on October 19, 2009. R.276-278. Dr. Bitzer and Dr. Jackson affirmed the initial non-severe psychiatric review and light residual functional capacity. R.278.

**D.      The ALJ's Decision**

On September 1, 2009, the ALJ issued his decision finding that Claimant has not been under a disability within the meaning of the Social Security Act since April 25, 2007, the date his application for supplemental security income was filed. R.19. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 25, 2007. R.11. At step two, the ALJ found that Claimant has severe impairments, including status post-surgical repair right ankle, chronic pancreatitis, depressive disorder, anti-social personality disorder, and polysubstance abuse. R.11. The ALJ concluded that Claimant's impairments are severe because they significantly limit the claimant's ability to do work-related activities." R.11.

At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R.11. Specifically, the ALJ's stated: "I have evaluated the available medical evidence for each of the claimant's severe impairment. From this evaluation, I find that none of these impairments, individually or in combination, meet or medically equal any listing, in particular, 1.02 *Major dysfunction of a joint*(*s*) (*due to any cause*), 1.03 *Reconstructive surgery or surgical arthodesis of a major weight-bearing joint*, *12.04 Affective disorders*, 12.08 *Personality disorders*, *and* 12.09 *Substance addiction disorders.*" R.11.

The ALJ then considered Claimant's residual functional capacity and concluded that Claimant has "the residual functional capacity to perform unskilled light work as defined in 20 C.F.R. § 416.967(b), with limitations: The claimant can lift a maximum of 20 pounds occasionally and lift and carry up to 10 pounds frequently, stand and/or walk about 6 hours in a

normal 8-hour workday, sit about 6 hours in a normal 8-hour workday, and push and/or pull to include operation of hand and/or foot controls as restricted by the limitations on carrying/lifting and restricted by no use of his right lower extremity subject to postural limitations of only occasionally climbing ramps or stairs, and of never climbing ladders, ropes, or scaffolds; an environmental limitation of avoiding concentrated exposure to hazards (machinert [sic], heights, etc.); and limitations imposed by the claimant's mental impairments such that he can perform only simple, repetitive tasks, that he not be required to do [sic] participate in group projects, and that he have occasional contact with supervisors, co-workers, and the general public." R.14.

The ALJ also concluded "that the claimant's medically determinable impairments could cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R.15. The ALJ, however, further explained that Claimant's testimony is "unpersuasive; his statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are unsupported by the documentary evidence." R.15.

At step four, the ALJ acknowledged that Claimant did not have any past relevant work. R.18. The ALJ, however, concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R.19. The ALJ ultimately concluded that Claimant has not been under a disability, as defined in the Social Security Act, since April 25, 2007. R.19.

## II. LEGAL STANDARDS

### A.    Standard Of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Under such circumstances, the district court reviews the decision of the ALJ.  *Id.*  Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision.  *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A "mere scintilla" of evidence is not enough.  *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge between the evidence and the result."  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand.  *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Although the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision.  *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).  It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations."  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  Thus, judicial review is limited to determining

whether the ALJ applied the correct standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish that he is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. 404.1520(a)(4)(I-v). Under this process, the ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or medically equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once a claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show

that other jobs exist in the national economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in his motion: (1) whether the ALJ's determination at step two was erroneous because he failed to assess the combined effect of Claimant's impairments; (2) whether the ALJ's determination at step three concerning whether Claimant's impairments meet or medically equal a listed impairment or combination of impairments was erroneous; (3) whether the ALJ's RFC determination was erroneous; (4) whether the ALJ's credibility determination was patently wrong; (5) whether the ALJ erred by failing to conduct a § 404.1535 analysis; and (6) whether the ALJ's step five determination was erroneous. The Court will address each argument in turn.

**A.     At Step Two, The ALJ Did Not Err In Determining That Claimant Has A Severe Impairment**

At step two of the analysis, the ALJ must determine whether a claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 1520(a)(4)(ii). Claimant argues that the ALJ erred by failing to assess the combined effect of all Claimant's impairments and the functional impact of those impairments, prejudicing the ALJ's ultimate determination that Claimant is not disabled. Claimant's Br.[Dkt.#53], at 8-9. The Court disagrees.

 In this case, the ALJ concluded that Claimant has the severe impairments of status post-surgical repair right ankle, chronic pancreatitis, depressive disorder, anti-social personality disorder, and polysubstance abuse. R.11. The Seventh Circuit recently explained "[a]s long as

the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process" and it referred to step two of the ALJ's analysis as a "threshold requirement." *Castile v. Astrue*, 617 F.3d 923, 927-27 (7th Cir. 2010) (even though ALJ found the claimant's chronic fatigue syndrome was not severe, the ALJ proceeded with the evaluation process because he found other severe impairments and properly considered both the severe and non-severe impairments to determine the claimant's RFC); *see also Eskew v. Astrue*, 2011 WL 6009005, at *2 (7th Cir. 2011) (finding no error when the ALJ did not consider non-severe impairment in combination after finding that the claimant had severe impairments and reiterating that step two is a threshold assessment); *Willis v. Astrue*, 2011 WL 2607042, at *9 (S.D. Ill. July 1, 2011) ("Further, the determination of whether a particular impairment is severe or not is of no consequence to the outcome of the case where, as here, the ALJ recognized other severe impairments and so proceeded with the full evaluation process.").

The case at bar is virtually indistinguishable from *Castile*, *Eskew* and *Willis*. The Seventh Circuit's analysis in those cases dictates a similar conclusion here that the ALJ did not err in this case when he determined which of Claimant's impairments were severe and continued on in the five step analysis based on finding at least one severe impairment. Moreover, Claimant never explains how or why the failure to assess the combined effects of all of Claimant's impairments significantly distorts the analysis that should have been undertaken at subsequent steps in the process. Therefore, the Court finds that the ALJ's analysis at step two was not erroneous.

**B.     The ALJ Did Not Err In Determining That Claimant's Impairments Or Combination Of Impairments Do Not Meet Or Medically Equal A Listed Impairment**

At step three, the ALJ must determine whether a claimant's impairment or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, a claimant is disabled. *Id.* If the impairments do not meet or medically equal a listing, the analysis continues. Claimant has the burden of showing that his impairments meet a listing and must show that the impairments meet all of the requirements specified in the listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Claimant argues that the ALJ erred at step three by not considering all of his impairments in combination. Claimant's Br. [Dkt.#53], at 9-13. The argument is not persuasive.

Here, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meets or medically equals a listing. R.11. The ALJ stated: "I have evaluated the available medical evidence for each of the claimant's severe impairment. From this evaluation, I find that none of these impairments, individually or in combination, meet or medically equal any listing, in particular, 1.02 *Major dysfunction of a joint(s)* (*due to any cause*), 1.03 *Reconstructive surgery or surgical arthodesis of a major weight-bearing joint*, 12.04 *Affective disorders*, 12.08 *Personality disorders*, *and* 12.09 *Substance addiction disorders.*" R.11. Accordingly, this Court's review of the ALJ's decision indicates that the ALJ properly considered Claimant's multiple impairments in evaluating whether they meet or medically equal a listing, individually or in combination.

1.      **Physical impairments**

    a.      **Ambulation**

Concerning his physical impairments, Claimant objects that the ALJ "failed to undertake an assessment as to whether [he] is capable of effective ambulation in accordance with 1.00(B)(2)(b)." Claimant's Br.[Dkt.#53], at 10. Pursuant to Listing 1.00(B)(2)(b), the inability to ambulate is defied as "an extreme limitation of the ability to walk." 20 C.F.R., Part 404, Subpart P. App. 1 §1.00(B)(2)(b). In his decision, the ALJ observed that "physical examination found the claimant exhibiting a full range of motion in the ankle and 5/5 strength in his right lower extremity." R.12.  The ALJ also noted that Claimant uses a brace to support the ankle but that there is no documentation in the record that Claimant requires an assistive device to ambulate and that Claimant had a normal range of motion in all four extremities. R.12.

The Court finds that the ALJ's conclusion that Claimant's right ankle repair is a severe, but not disabling impairment is supported by the record evidence.  There is nothing in the record from any treating, consulting or reviewing physician indicating that Claimant's physical impairment with his right ankle resulted in "an extreme limitation" in his ability to walk. Claimant's self-serving testimony to the contrary, which the ALJ did not find credible, is not sufficient to establish otherwise. *See Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("The claimant bears the burden of proving his condition meets or equals a listed impairment.").

    b.      **Pancreatitis**

Claimant argues that the ALJ erred by asserting there is no listing for pancreatitis. Claimant's Br. [Dkt.#53], at 11-12.  Specifically, the ALJ concluded that chronic pancreatitis is not an impairment recognized as a listing under 20 C.F.R. Part 404, Subpart P. Appendix 1, and

therefore, it is not possible to make a determination of whether this impairment meets or medically equals a listing. R.12. Claimant, however, argues that listing 4.00(E(7)(c)(8) may apply because it mentions pancreatitis as a non-cardiac impairment that may contribute to chest discomfort. Claimant also points to listing 12.09(H) which mentions pancreatitis by reference to listing 5.08 which addresses weight loss due to a digestive order.[2]

The ALJ recognized that there is evidence throughout the record that Claimant sought medical treatment for abdominal pain secondary to alcohol-induced pancreatitis. R.12. Based on the medical records, the ALJ found that the treatment Claimant received for this condition consisted of brief hospital admissions for testing followed by Claimant being prescribed medication and discharge and that Claimant's treating physicians advised him to stop drinking and eating greasy and spicy foods. R.12. Based on the available evidence, the ALJ concluded that Claimant's alleged chronic pancreatitis is not a disabling impairment. R.12.

The ALJ's conclusion is supported by substantial evidence. There is nothing in Claimant's record from any treating, consulting or reviewing physician indicating that Claimant's pancreatitis and alleged abdominal pain resulted in an extreme limitation in his ability to function or that Claimant has any cardiovascular impairment or digestive disorder. Claimant's self-serving testimony to the contrary, which the ALJ did not find credible, is not sufficient to establish otherwise. *See Maggard*, 167 F.3d at 380.

Moreover, Claimant fails to show how his pancreatitis meets or equals the requirement for listings 4.00(E)(7)(c)(8) or 12.09(H). Although Claimant describes some of the history of his

---

[2] Listing 5.08 addresses "weight loss due to any digestive disorder despite continuing treatment as prescribed, with BMI of less than 17.50 calculated on at least two evaluation at least 60 days aprat within a consecutive 6-month period."

medical treatment and argues that listings 4.00(E)(7)(c)(8) or 12.09(H) may apply, there is nothing in Claimant's medical record from any treating, consulting or reviewing physician that would suggest that Claimant suffers from any cardiac condition or documents any digestive disorder or significant weight loss.

### 2. Mental impairments

Concerning his mental impairments, Claimant objects that the ALJ did not "utilize the special technique which is required for the assessment of mental impairments." Claimant's Br. [Dkt.#53 ], at 11-12. The Court disagrees.

Dr. Oberlander testified at Claimant's administrative hearing and opined that Claimant has mild limitation in activities of daily living, moderate limitation in social functions, moderate limitation in maintaining concentration, persistence, or pace, and had not experience any episodes of decompensation. R.13. Dr. Oberlander determined that Claimant satisfied neither the paragraph-B nor C criteria. R.13-14. The ALJ specifically stated: "After reviewing the record, I agree with and adopt the medical expert's assessment." R.14. *See Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (an ALJ may rely on medical expert testimony in making a disability determination); *see also* 20 C.F.R. § 416.927(f)(2)(iii) ("Administrative law judge may also ask and consider opinions from medical experts on the nature and severity of your impairment(s)....").

The ALJ reasonably concluded that Claimant's condition did not medically equal a listing. R.11-12. To assess potential medical equivalence, a physician designated by the Commissioner is required to decide whether the medical finding are at least medically equal to one to the listed impairment. 20 C.F.R. § 416,9269(c); SSR 83-19. Here, state agency reviewing

18

physicians Julio Pardo M.D. and Donald Henson Ph.D. determined that Claimant's condition did not medically equal any listed impairment. R.213-234. No treating, consulting or reviewing physician opined otherwise. Substantial evidence, therefore, supports the ALJ's determination and the ALJ reasonably concluded that Claimant's impairments do not meet or medically equal a listed impairment. *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (holding that a state agency physician's opinion that a claimant's condition did not medically equal a listed impairment constituted substantial evidence supporting an ALJ's step three analysis).

For all of these reasons, the Court finds that the ALJ reasonably concluded that Claimant's impairments did not meet or are not equal in severity to the requirements that meet a Social Security listing.

## C.    Substantial Evidence Supports The ALJ's RFC Determination

Prior to step four of the analysis, the ALJ is to determine a claimant's RFC. The ALJ then determines a claimant's past relevant work. 20 C.F.R. § 416.920(f). If a claimant still can perform past relevant work, the claimant is not disabled. If the claimant no longer can perform past relevant work, the analysis continues. 20 C.F.R. § 404.1520(a)(4)(iv). Claimant argues that the ALJ's RFC determination was erroneous and challenges the ALJ's step four analysis, arguing that: (1) the ALJ failed to engage in a sufficient narrative discussion of Claimant's RFC; (2) the ALJ failed to consider evidence of Claimant's pancreatitis and associated pain and how these conditions would affect his ability to perform light work; (3) the ALJ failed to give the opinion of Claimant's treating physician controlling weight and failed to give good reasons for ignoring his psychiatrist's opinion; and (4) the ALJ failed to consider Claimant's GAF score.

Claimant's Br. [Dkt.353], at 13-16.  The Court addresses each argument in turn.


### 1.    The ALJ provided a sufficient narrative discussion of Claimant's RFC

Claimant argues that the ALJ did not "undertake a function-by-function assessment of Jones's work-related abilities" in formulating his RFC finding. Claimant's Br.[Dkt.#53], at 14. This argument is unavailing.

An RFC assessment is to consider functional limitations and restrictions that "result from an individual's medically determinable impairment or combination of impairments."  SSR 96-8p. The plain language of the Social Security Regulation requires an ALJ to consider, not articulate, the RFC on a function-by-function basis. *Knox v. Astrue*, 572 F. Supp. 2d 926, 939 (N.D. Ill. 2008), *aff'd* 327 Fed. App'x 652 (7th Cir. 2009), citing *Lewis v. Astrue*, 518 F. Supp. 2d 1031, 1043 (N.D. Ill. 2007).  The Seventh Circuit has recognized: "Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expressions of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox*, 327 Fed. App'x at 657-58 (holding the ALJ satisfied the discussion requirements by analyzing the objective medical evidence, the claimant's testimony, and other evidence).

In this case, the ALJ found that Claimant's "allegations regarding the limiting effects and the severity of the symptoms of his impairments are only partially credible. The claimant retains the ability to work at a light level of exertion [with restrictions] justifying the residual functional capacity.  This finding was made after examination of the claimant's medical records as a whole,

consideration of the factor presented at 20 CFR § 404.1529(c)(3) and Social Security Ruling 96-7p, and of the claimant's testimony." R.18.

Contrary to Claimant's argument, the ALJ did provide a sufficient narrative discussion that addressed the objective medical evidence and also considered Claimant's testimony. The ALJ reasonably accepted the opinions of the state agency doctors as to Claimant's physical impairments and Dr. Oberlander's opinion of Claimant's mental limitations. No contrary opinions were offered by Claimant. The ALJ discussed these opinions in the context of Claimant's medical history and also considered Claimant's testimony. The ALJ provided a logical bridge from the medical evidence with detailed reasons for his conclusions, and the ALJ's narrative analysis was more than sufficient to detail his finding that Claimant's was not disabled. **2. The ALJ considered Claimant's pancreatitis and associated pain**

Claimant argues that the ALJ failed to evaluate evidence of his pancreatitis and associated pain. Claimant's Br. [Dkt.#53], at 15. The Court disagrees.

The ALJ clearly considered as a threshold mater whether Claimant's pancreatitis was a disabling impairment and concluded that it was not. *See infra* III.B.1.b.; *see also* R.12 . It is true, however, that an ALJ cannot disregard a claimant's subjective statements about disabling pain solely because they are not substantiated by objective medical evidence. *Id.*; 20 C.F.R. § 404.1529(c)(2); *Clifford v. Apfel*, 227 F.3d 863, 871–72 (7th Cir.2000). Instead, an ALJ should compare the consistency of a claimant's statements against objective information in the medical record, and the credibility determination will only be disturbed if that finding is "unreasonable or unsupported." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006); SSR 96–7p.

Here, the ALJ recognized that Claimant sought treatment for abdominal pain secondary to alcohol-induced pancreatitis and that despite his treating physician's recommendations to stop drinking, Claimant continued to drink through at least April 2009. R.12, 16. The ALJ reasonably concluded that Claimant's pancreatitis and the associated pain was not a disabling limitation and that alcohol abuse played "a significant role in exacerbation of symptoms." R.12, 16. The Court cannot say, based on the record evidence, that the ALJ's determination that Claimant has the ability to perform light work was either unreasonable or unsupported. This is not a case in which the ALJ's RFC determination lacks any explanation or support in the record. To the contrary, the ALJ reasonably relied on medical sources and record evidence to determine Claimant's RFC for light work.

In addition, as discussed in more detail *supra* at III.D., the ALJ pointed out a number of inconsistencies in Claimant's self-reports concerning his allegedly disabling symptoms. The ALJ found Claimant's testimony unpersuasive and observed that Claimant's complaints did not comport with the record evidence or how he presented at the hearing. R.15-16.

**3.      The ALJ sufficiently explained the weight he gave to the medical opinions**

Claimant argues that the ALJ erred in not giving controlling weight to the opinion of his treating physician Dr. Stephen Penepacker and gave too much weight to the medical expert Dr. Oberlander and the reviewing physicians for the state agency. Claimant's Br. [Dkt.#53], at 15. The Court disagrees.

As part of the RFC analysis, an ALJ is required to evaluate the medical evidence of record, including the opinions and treatment notes of Claimant's doctors. 20 C.F.R. §§ 416.927, 416.929. A treating physician's opinion is entitled to controlling weight if it is supported by the

medical findings and is not inconsistent with the other substantial evidence in the record.  20

C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  A

contradictory opinion of a non-examining physician is not, by itself, sufficient for the ALJ to

reject an examining physician's opinion.  *Gudgel,* 345 F.3d at 470.  So long as the ALJ

"minimally articulates [his] reasons," he may discount a treating physician's opinion if it is

inconsistent with that of a consulting physician or other substantial medical evidence.  *Skarbek v.*

*Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).  Once well-supported contradictory evidence is

introduced, the treating physician's opinion is no longer controlling but remains a piece of

evidence for the ALJ to weigh.  *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

However, when an ALJ fails to credit a treating physician's opinion, he must at least minimally

discuss the reasons that lead him to that result.  *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir.

2001).

       Pointing only to Dr. Penepacker's encouragement that he "stop alcohol completely" and

his observation that it was "unlikely that current level of alcohol plays strong role in ongoing

psychiatric symptoms," Claimant fails to identify any medical opinion that the ALJ purportedly

failed to weigh. Claimant appears to mistake a treating physician's recommendation to his

patient concerning treatment protocol with a treating physician's opinion, the latter of which may

be entitled to controlling weight. 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements

from physicians and psychologists or other acceptable medical sources that reflect judgments

about the nature and severity of your impairment(s), including your symptoms, diagnosis and

prognosis, what you still can do despite your impairment(s), and your physical and mental

restrictions."); SSR 96-2p (medical opinions are "opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources").

There is nothing in the medical records that indicates that Dr. Penepacker, or any other treating physician, offered a medical opinion in this case. Therefore, it is impossible for the ALJ to have improperly weighed such evidence. *See Brooks v. Chater*, 91 F,3d 972, 978 (7th Cir. 1996) ("Given that [the claimant's treating physician] failed to venture an opinion as to the extent of [the claimant's] limitation or as to his residual capabilities, the evidentiary usefulness of his findings is slight, at best."). In contrast, Dr. Oberlander as a medical expert opined that Claimant "retains the mental capacity to engage in simple, repetitive, routine work activities with the only allowances needing to be taken into consideration is that the work environment not have him in any group projects with some minimal allowance for less than extensive contact with co-workers, the public, and any extensive repetitive contact with supervisors." R.46.

The ALJ reasonably relied on Dr. Oberlander's testimony and opinion in finding that Claimant could "perform only simple, repetitive tasks, that he not be required to participate in group projects, and that he have occasional contact with supervisors, co-workers, and the general public." R.14, 17. *See Kepple*, 268 F.3d at 516 (7th Cir. 2001) (an ALJ may rely on medical expert testimony in making disability a disability determination); *see also* 20 C.F.R. § 416.927(f)(2)(iii) ("Administrative law judges may also ask and consider opinions from medical experts on the nature and severity of your impairment(s)...."). Dr. Oberlander also testified about Claimant's intermittent treatment noting that Claimant's desire to avail himself of the appropriate psychiatric care "is marginal at best" and that there is a gap in treatment. R.17.

The ALJ also gave "[m]uch weight, although not controlling weight," to Claimant's therapist. R.17. Ms. Lambur noted that Claimant's primary excuse for not working was that he did not have a car. R.546, 550. Indeed, both Dr. Penepacker and Ms. Lambur discussed Claimant's employability and identified employment as a treatment goal. R.551. The record shows that Claimant's "treatment team does not see symptomology that would impede his ability" to work. R.551. In order to have his benefits extended with the Illinois Department of Human Services, Claimant needed a letter to indicate that he was unable to work. R.551. Yet, Ms. Lambur refused to write such letter. R.551.

In addition, the ALJ relied upon the state agency physician Dr. Pardo who opined on Claimant's physical impairments and determined that Claimant was capable of lifting or carrying up to 20 pounds occasionally; lifting or carrying up to 10 pounds frequently; and sitting, standing, or walking for about six hours in a normal eight-hour workday. R.228. The ALJ reasonably adopted Dr. Pardo's assessment that Claimant is "capable of light work" in assessing his residual functional capacity because it was "consistent with the medical record available at the time" and did "not conflict with evidence added at the hearing level." R.17. There is no other opinion from a treating physician that Claimant is not capable of light work and as discussed in greater detail below (*see supra* III.D.), it is clear that the ALJ was not persuaded by and did not credit Claimant's subjective complaints about his limitations.

### 4.    There is no opinion from any treating physician that Claimant is disabled because of his GAF score

Claimant argues that the ALJ's RFC was erroneous because he failed to consider Claimant's GAF scores. Claimant's Br. [Dkt.#53], at 16. This argument is not persuasive.

The GAF Scale reports a clinician's judgment of an individual's overall level of functioning and is used in planning, measuring the impact, and predicting the outcome of treatment. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000)("DSM-IV-TR"). However, the Seventh Circuit has recognized that neither the Social Security regulations nor case law requires an ALJ to determine the extent of an individual's disability based entirely on his GAF score. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Perez v. Astrue*, 881 F. Supp. 2d 916, 946-947 (N.D. Ill. 2012) (finding debatable the significance of a single RFC score of 45–50 and stating that "a claimant cannot use a GAF score to establish disability").

In this case, the ALJ credited the medical expert's specific opinions regarding Claimant's limitations "such that he can perform only simple, repetitive tasks, that he not be required to so participate in group projects, and that he have occasional contact with supervisors, co-workers, and the general public." R.14. An ALJ is not required to cite or discuss every piece of evidence in his analysis, but his analysis must build a logical bridge between the evidence and his conclusion. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Claimant points to no other medical opinion imposing greater work-related restrictions. Because the ALJ explained how he reached his conclusion regarding Claimant's mental limitations, including his consideration of Claimant's treating psychiatrist and therapist as well as the opinion of the medical expert, and his analysis is supported by substantial evidence, the Court does not find any error.[3]

_____

[3] *See, e.g., Bayless v. Astrue*, 2012 WL 3234044, at *17 (N.D. Ill. Aug. 6, 2012) (finding that in light of the ALJ's extensive discussion of the narrative findings provided by the medical expert, the ALJ's failure to specifically mention the claimant's GAF scores did not serve as a basis for a remand); *D.R.S. ex rel. Walker v. Astrue*, 2012 WL 3061596, at *8 (S.D. Ind. July 26, 2012) (affirming despite the ALJ's

For all of the reasons discussed *infra* in section III.C. of this Memorandum Opinion and Order, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

**D.      The ALJ's Credibility Determination Is Not Patently Wrong**

An ALJ is in the best position to determine the credibility of witnesses, and this Court reviews that determination deferentially.  *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)).  The ALJ has the discretion to discount testimony on the basis of evidence in the record.  *Johnson v. Barnhart*, 449 F.3d 804, 806-807 (7th Cir. 2006).  However, the basis for the ALJ's credibility determination must be articulated and "sufficiently specific" to make clear to a claimant and subsequent reviewers the weight given to a claimant's statements and the reasons for the weight given.  SSR 96-7p.

It is not entirely clear what Claimant is challenging about the ALJ's credibility determination. Claimant's Br. [Dkt.#53], at 16-18.  Claimant explains that "[t]o determine credibility the ALJ was required to consider factors such as [Claimant's activities of daily living], his level of pain or other symptoms, aggravating factors, medications and side effects thereof, treatment, and limitations provided by the medical record."  Claimant's Br. [Dkt.#53], at 18.  The Court does not dispute Claimant's characterization of what an ALJ should consider in a credibility analysis, and the Court finds that the ALJ's decision, in fact, reflects that he considered multiple factors in assessing the credibility of Claimant's subjective complaints and that his credibility determination was not patently wrong.

─────────────────────────────

failure to discuss GAF scores of 50 and below because the ALJ adequately considered the medical and other evidence of the claimant's functioning); *Thomas v. Astrue*, 2012 WL 2130582, at *7 (N.D. Ind. June 12, 2012) ("Plaintiff also argues that his GAF score of 48 proves that he has disabling depression. However, a GAF score alone is not determinative of disability. Because the ALJ described how she reached her conclusion regarding Plaintiff's depression, including her consideration of medical expert opinions, the ALJ's decision on this point will not be reversed or remanded.").

The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." R.15. This Court is aware that the Seventh Circuit has become increasingly critical of this exact boilerplate language. *Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012). Simply ticking off certain medical evidence while not specifying how the evidence undermines a claimant's credibility is not enough. *Id.* Instead, an ALJ must support a credibility determination with specific reference to and discussion of the evidence. *Id.* The Seventh Circuit has recognized that "[i]f the ALJ has otherwise explained his conclusion adequately, the inclusion of [the boilerplate] language can be harmless." *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).

The ALJ here stated: "The claimant's testimony is unpersuasive; his statement concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are unsupported by the documentary evidence." R.15. The ALJ then detailed why he found Claimant unpersuasive. Specifically, the ALJ noted that the record does not support Claimant's "testimony that he can only sit for two minutes nor did he appear uncomfortable or ask to stand during the hour-long hearing." R.15. The ALJ also noted that there is "no indication that the symptoms have progressively worsened over time such that it is reasonable to expect that he could cut the grass or walk one mile to the store in June 2009, but testify in the hearing that he no longer can do those things." R.16. The ALJ explained that there is no evidence in the record to support such a finding nor is there evidence that Claimant sought treatment if indeed there has been a decrease in functioning. R.16.

The ALJ also pointed out inconsistencies in Claimant's reports. R.17. For example, the ALJ noted that in an undated Activities of Daily Living questionnaire completed by Claimant, he reported forgetting tasks after he had started them. R.17, 149. Yet in that same questionnaire, Claimant reported that he did not need help remembering to take his medication. R.17, 148. And then during his initial evaluation at DuPage County Heath Center, Claimant stated that he feels his memory is appropriate. R.17, 262.

In this case, the ALJ engaged in a detailed analysis of the record, including Claimant's treatment history. R.11-14. The ALJ found Claimant's current allegations regarding his symptoms and limitations less than fully credible based upon the contemporaneous medical records. The ALJ explained, citing specifically to the record, why he did not find Claimant persuasive. R.15-17. A discrepancy between the reported complaints and the medical evidence is probative that a witness may be exaggerating her condition. *Powers v. Apfel*, 207 F.3d 431, 435-436 (7th Cir. 2000). The Seventh Circuit has recognized that an applicant for disability benefit may "have an incentive to exaggerate [his] symptoms," and therefore, "an administrative law judge is free to discount the applicant's testimony on the basis of other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). The ALJ was in the best position to assess the evidence and observe Claimant, and this is not a case in which the ALJ's credibility finding lacks any explanation or support. In light of the various factors that contributed to the ALJ's credibility determination, the Court cannot say that the ALJ's judgment is patently wrong.

**E.      The ALJ Was Not Required To Perform A § 404.1535 Analysis**

A person who is otherwise disabled cannot receive supplemental security income or disability insurance benefits if alcoholism or drug addiction is a "contributing factor material to

the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

Thus, "[w]hen an applicant for disability benefits both has a potentially disabling illness and is a

substance abuser, the issue for the administrative law judge is whether, were the applicant not a

substance abuser, [he] would still be disabled." *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th

Cir.2006); *see* 20 C.F.R. § 404.1535(b)(1) ("The key factor we will examine in determining

whether drug addiction or alcoholism is a contributing factor material to the determination of

disability is whether we would still find you disabled if you stopped using drugs or alcohol."). If

an ALJ finds that the claimant would still be disabled if she stopped using drugs or alcohol, "[he]

is deemed disabled 'independent of [his] drug addiction or alcoholism' and is therefore entitled

to benefits." *Kangail*, 454 F.3d at 629 (quoting 20 C.F.R. § 404.1535(b)(2) (ii)).

      Claimant here argues that the ALJ erred because he failed to do a § 404.1535 evaluation.

Claimant's Br. [Dkt.#53], at 18.  Claimant, however, is mistaken.  Because the ALJ determined

that Claimant was not disabled, the ALJ did not need to determine whether his substance abuse

was a material contributing factor and no further inquiry was required.  *See Fuller v. Astrue*,

2013 WL 617073, at *4 (N.D. Ill. Feb. 19, 2013).

**F.**    **The Hypothetical Posed To The VE And Relied Upon By The ALJ Included All Appropriate Limitations**

      While a claimant bears the burden of proof at steps one through four of the disability

analysis, the burden shifts to the Commissioner at step five.  *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004).  At the step five of the disability analysis, the Commissioner must

determine whether a significant number of jobs exist which a claimant can perform given his

limitations. *Craft*, 539 F.3d at 674.  The ALJ must demonstrate that work exists in significant

numbers in the national economy that a claimant can do given the ALJ's RFC finding based on

the claimant's age, education and work experience. 20 C.F.R. §§ 404.1512(g) and 404.1560(c). This finding must be supported by substantial evidence to overcome the Commissioner's burden. 42 U.S.C. § 405(g); *Overman v. Astrue*, 456 F.3d 456, 465 (7th Cir. 2008).

Claimant argues that the ALJ erred at step five by failing to include all of the limitations that are support by the medical evidence in the hypothetical which he posed to the VE. Claimant's Br. [Dkt.#53], at 19-20. The Court disagrees.

The hypothetical posed to the VE only must include all of the limitations that the ALJ finds are supported by the evidence in the record. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). As discussed above, the Court found that the ALJ's RFC was supported by substantial evidence. Therefore, the hypothetical posed to the VE only had to include the limitations included in the ALJ's RFC and should not have included any other limitation.

The argument that the ALJ "erred by failing to include in his hypothetical question all of the documented limitations supported by the medical evidence in the record" is repetitive of Claimant's challenge to the ALJ's RFC determination. Having previously concluded that the RFC was supported by substantial evidence (*see infra* III.C.), the ALJ included all of the limitations in the RFC in the hypothetical posed to the VE, and the ALJ did not err at step five for failing to include other limitations not include in the RFC.

Claimant also argues that the VE's testimony is unreliable because he "either refused or could not produce evidence to support the number of jobs about which he testified." *See* Claimant's Br. [Dkt.#53], at 20. This argument also is not persuasive.

At the hearing, the VE testified that his assessment was consistent with the *Dictionary of Occupational Titles* and was based on the Illinois Department of Employment Labor Market

Statistics as well as his 15 years of experience in this field. R.61-62. *See Nicholson v. Astrue*, 2009 WL 2512417, at 5 (7th Cir. 2009) (finding that the ALJ "did all that SSR00-4p required" when the VE affirmed that his testimony was consistent the *Dictionary of Occupational Titles* and the claimant did not identify or mention any apparent inconsistencies during the hearing). The *Dictionary of Occupational Titles* and the Illinois Department of Employment Labor Market Statistics are government sources of job data of which the ALJ is required to take administrative notice. *See* 20 C.F.R. § 404.1566(d). The ALJ, therefore, reasonably relied on the vocational expert's testimony in finding that Claimant could perform a significant number of jobs despite the limitations caused by his impairments.

## IV.  CONCLUSION

For the reasons set forth in the Court's Memorandum Opinion and Order, Claimant's motion for summary judgment [Dkt.#53] is denied.  Respondent Michael Astrue's motion for summary judgment [Dkt.#59] is granted, and the decision of the Commissioner of Social Security is affirmed.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: April 8, 2013